Slip Op. 18-139

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **UNITED STATES STEEL CORPORATION ET AL.,** | |
| **Plaintiff and Consolidated Plaintiffs,** | |
| **and** | |
| **MAVERICK TUBE CORPORATION ET AL.,** | **Before: Claire R. Kelly, Judge** |
| **Plaintiff-Intervenors,** | **Consol. Court No. 14-00263** |
| **v.** | |
| **UNITED STATES,** | |
| **Defendant,** | |
| **and** | |
| **MAVERICK TUBE CORPORATION ET AL.,** | |
| **Consolidated Defendant-Intervenors.** | |

## OPINION AND ORDER

[Granting in part Plaintiff's motion for enforcement of judgment and instructing Commerce to issue a revised Timken Notice.]

Dated: October 17, 2018

Luke A. Meisner, Schagrin Associates, of Washington, DC, for Plaintiff and Consolidated Defendant-Intervenor United States Steel Corporation.

Lizbeth R. Levinson and Ronald M. Wisla, Fox Rothschild LLP, of Washington, DC, for Consolidated Plaintiffs GVN Fuels Limited, Maharashtra Seamless Limited, and Jindal Pipes Limited.

Alan Hayden Price, Adam Milan Teslik, Laura El-Sabaawi, and Robert Edward DeFrancesco, III, Wiley Rein, LLP, of Washington, DC, for Plaintiff-Intervenor and Consolidated Defendant-Intervenor Maverick Tube Corporation.

Roger Brian Schagrin, Christopher Todd Cloutier, John Winthrop Bohn, and Paul Wright Jameson, Schagrin Associates, of Washington, DC, for Plaintiff-Intervenors and Consolidated Defendant-Intervenors Boomerang Tube LLC, Energex Tube, Tejas Tubular Products, TMK IPSCO, Vallourec Star, L.P., and Welded Tube USA Inc.

Justin Reinhart Miller, Senior Trial Counsel, U.S. Department of Justice, Civil Division, International Trade Field Office of New York, NY, for Defendant.  With him on the brief were Chad A. Readler, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Claudia Burke, Assistant Director, of Washington, DC.  Of counsel on the brief was Reza Karamloo, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Kelly, Judge: Before the court is United States Steel Corporation's ("U.S. Steel" or "Plaintiff") motion to enforce the judgment issued in United States Steel Corp. v. United States, 41 CIT __, 219 F. Supp. 3d 1300 (2017) ("U.S. Steel II").  See Mot. to Enforce J., June 19, 2018, ECF No. 154.  U.S. Steel contends that the U.S. Department of Commerce ("Department" or "Commerce") failed to recalculate the "all-others rate" pursuant to section 735(c)(5)(A) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1673d(c)(5)(A) (2012), after Commerce altered the dumping margins for mandatory respondents in its Final Results of Redetermination Pursuant to Remand, Aug. 31, 2016, ECF No. 114 ("Remand Results"), and this court sustained Commerce's Remand Results.[1]  See U.S. Steel II, 41 CIT __, __, 219 F. Supp. 3d 1300, 1325 (2017).  U.S. Steel requests that the court enforce the judgment in U.S. Steel II by requiring Commerce to recalculate the all-others rate based on the revised dumping margins.  Mot. to Enforce J. at 2.  The United States ("Defendant") opposes, arguing, inter alia, that Commerce fully effectuated the court's judgment in U.S. Steel II.  Def.'s Resp. Opp. Pl.'s Mot. for Enforcement of the

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant portions of Title 19 of the U.S. Code, 2012 edition, unless otherwise specified.

Court's J. at 6, July 27, 2018, ECF No. 158 ("Def.'s Br.").  For the reasons that follow, U.S. Steel's motion is granted in part, and Commerce will issue a revised Timken notice either reconsidering or further explaining its determination.

## BACKGROUND

Commerce initiated the underlying antidumping duty ("ADD") investigation of certain oil country tubular goods ("OCTG") from India on July 29, 2013.  <u>See</u> <u>Certain [OCTG] from India, the Republic of Korea, the Republic of the Philippines, Saudi Arabia, Taiwan, Thailand, the Republic of Turkey, Ukraine, and the Socialist Republic of Vietnam</u>, 78 Fed. Reg. 45,505, 45,506–12 (Dep't Commerce July 29, 2013) (initiation of [ADD] investigations).  Commerce published a final affirmative determination in the investigation on July 18, 2014, <u>see</u> <u>Certain [OCTG] From India</u>, 79 Fed. Reg. 41,981 (Dep't Commerce July 18, 2014) (final determination of sales at less than fair value and final negative determination of critical circumstances) ("<u>Final Results</u>"), and issued the initial ADD order on September 10, 2014.  <u>See</u> <u>Certain [OCTG] from India, the Republic of Korea, Taiwan, the Republic of Turkey, and the Socialist Republic of Vietnam</u>, 79 Fed. Reg. 53,691 (Dep't Commerce Sept. 10, 2014) ([ADD] orders) ("<u>ADD Order</u>").

The rates set for respondents Jindal SAW Ltd. ("Jindal SAW") and GVN Fuels Limited ("GVN") were challenged before this court.  <u>See, e.g.</u>, Compl. ¶¶ 19, 25, Nov. 10, 2014, ECF No. 9; Summons, Oct. 10, 2014, ECF No. 1.  No party challenged the all-others rate.  The court remanded several issues for further consideration or explanation, <u>see</u> <u>United States Steel Corp. v. United States</u>, 40 CIT __, __, 179 F. Supp. 3d 1114, 1156 (2016) ("<u>U.S. Steel I</u>"), and Commerce issued the results of its remand

redetermination pursuant to the remand order in U.S. Steel I on August 31, 2016.  See

Remand Results.  The court sustained Commerce's Remand Results in U.S. Steel II.  See

U.S. Steel II, 41 CIT at __, 219 F. Supp. 3d at 1325.

To conform the Final Results with the court's decisions in U.S. Steel I and U.S.

Steel II, Commerce published a notice in the Federal Register announcing a court

decision not in harmony with a prior determination (also referred to as a "Timken Notice")

and amended the Final Results.[2]  See Certain [OCTG] From India, 82 Fed. Reg. 17,631

(Dep't Commerce Apr. 12, 2017) (notice of court decision not in harmony with final

determination of sales at less than fair value and final negative determination of critical

circumstances and notice of amended final determination) ("Amended Final Results").

Although the Amended Final Results lists new rates for the mandatory respondents, it

makes no reference to the all-others rate.  Subsequently, on June 20, 2017, Commerce

published an amendment to the ADD Order, listing the estimated weighted-average

dumping margins for Jindal SAW at 11.24% and for all others at 5.79%.[3]  See Certain

---

[2] The Timken Notice stems from Timken Co. v. United States, 893 F.2d 337 (Fed. Cir. 1990), as clarified by Diamond Sawblades Mfrs. Coalition v. United States, 626 F.3d 1374 (Fed. Cir. 2010), where the Court of Appeals for the Federal Circuit clarified the requirements of 19 U.S.C. § 1516a(c)(1).  Commerce must notify the public when a court's final judgment in a case is "not in harmony" with an original agency determination, and Commerce will suspend liquidations to ensure that post-notice entries are liquidated at a rate consistent with a conclusive court decision. Timken Co., 893 F.2d at 341.

[3] In the Final Results, the all-others rate was 5.79%, an average of the calculated weighted-average dumping margins for Jindal SAW (9.91%) and GVN (2.05%).  See Final Results, 79 Fed. Reg. at 41,982.  As a result of modifications pursuant to U.S. Steel I and U.S Steel II, Commerce revised Jindal SAW's weighted-average dumping margin to 11.24% and GVN's weighted-average dumping margin to 1.07% (de minimis) in the Amended Final Results.  See Amended Final Results, 82 Fed. Reg. at 17,631.  Had Commerce recalculated the all-others rate following the

(footnote continued)

[OCTG] From India, 82 Fed. Reg. 28,045, 28,046 (Dep't Commerce June 20, 2017) (amendment of [ADD] order) ("Amended ADD Order").

Following the publication of the Amended ADD Order, counsel for U.S. Steel contacted Commerce and requested that Commerce revise the all-others rate based on the revised dumping margins calculated for GVN and Jindal SAW that were sustained by this court. See United States Steel Corp. v. United States, 42 CIT __, __, 319 F. Supp. 3d 1295, 1298–99 (2018) ("U.S. Steel III") (citing to U.S. Steel's submission); see also 19 U.S.C. § 1673d(c)(5)(A) ("the estimated all-others rate shall be an amount equal to the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated, excluding any zero and de minimis margins . . . .") Commerce responded that the Amended ADD Order "fully effectuate[s] the court's affirmed remand." See id. (citing to Commerce's response).

On July 20, 2017, U.S. Steel commenced suit in this court challenging the all-others rate published in the Amended ADD Order. See U.S. Steel III, 42 CIT at __, 319 F. Supp. 3d at 1295. The court granted the defendant's motion to dismiss, holding, inter alia, that U.S. Steel's claim was precluded because U.S. Steel could have challenged the all-others rate at the time it challenged the individual respondents' rates in U.S. Steel I. See id. at 9–10. The court explained that U.S. Steel had all of the facts it required to seek a change to the all-others rate in U.S. Steel I and U.S. Steel II, and therefore could have

---

decision in U.S. Steel II, the all-others rate would have increased to 11.24%, since GVN's de minimis rate would have been excluded. See 19 U.S.C. § 1673d(c)(5)(A) (providing that the all-others rate should equal the weighted average of the estimated weighted average dumping margins established for exporters individually investigated, excluding any zero and de minimis margins).

sought a change to the all-others rate in addition to challenging the mandatory respondents' rates.  See id. at 9–10.  As a result, U.S. Steel's challenge to the all-others rate was merged into the U.S. Steel II judgment.  Id. at 10.  The court explained that U.S. Steel, "in essence, contends that the judgment in U.S. Steel II required Commerce to recalculate the all-others rate," and that if U.S. Steel believes that the U.S. Steel II judgment requires such action by Commerce, U.S. Steel may seek to enforce the judgment issued in U.S. Steel II.  Id. at 10–11.  U.S. Steel brought the present motion seeking to compel Commerce to recalculate the all-others rate.  Mot. to Enforce J. at 2.

U.S. Steel makes several arguments in support of its assertion that enforcement of the U.S. Steel II judgment requires Commerce to recalculate the all-others rate.  First, U.S. Steel argues that 19 U.S.C. § 1673d(c)(5)(A) requires that Commerce recalculate the all-others rate when the dumping margins for mandatory respondents change in the course of judicial review.  Pl. [U.S. Steel's] Br. Supp. Mot. Enforce J. at 6, June 19, 2018, ECF No. 154 ("Pl.'s Br.").  Second, U.S. Steel argues that Commerce's determination of the all-others rate contravenes the line of cases holding that Commerce may not rely on dumping margins that have been invalidated by the courts.  Id. at 6.  Third, U.S. Steel argues that Commerce's determination of the all-others rate in the Amended ADD Order departed from Commerce's established practice of revising the all-others rate after its final remand determination is sustained by the court.  Id. at 6–7.

## JURISDICTION AND STANDARD OF REVIEW

The court has inherent authority to enforce its own judgments.  See B.F. Goodrich Co. v. United States, 18 CIT 35, 36, 843 F. Supp. 713, 714 (1994).  This authority includes the "power to determine the effect of its judgments and issue injunctions to protect against attempts to attack or evade those judgments."  United States v. Hanover Ins. Co., 82 F.3d 1052, 1054 (Fed. Cir. 1996).  The court will grant a motion to enforce a judgment "when a prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it, even if the noncompliance was due to misinterpretation of the judgment."  Heartland Hosp. v. Thompson, 328 F. Supp. 2d 8, 11 (D.D.C. 2004); GPX Int'l Tire Corp. v. United States, 39 CIT __, __, 70 F. Supp. 3d 1266, 1272 (2015).

## DISCUSSION

When Commerce conducts an ADD investigation and makes an affirmative determination, it calculates the "estimated weighted average dumping margin for each exporter and producer individually investigated," ("mandatory respondent rates") as well as an estimated all-others rate for those exporters and producers not individually examined.  See 19 U.S.C. § 1673d(c)(1)(B)(i).  The all-others rate is the weighted average of the mandatory respondent rates, excluding any zero and de minimis rates.  19 U.S.C. § 1673d(c)(5)(A).   Parties may challenge Commerce's findings made in an ADD investigation before this court, see 19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c), and this court in some cases will remand Commerce's findings for further consideration. Commerce, pursuant to a remand order, may alter its methodology in a manner that affects the calculation of the mandatory respondent rates, as Commerce did in its

Remand Results pursuant to the remand order in U.S. Steel I.  See Remand Results at

51–52.  Because the all-others rate is a function of the mandatory respondent rates, a

change to the mandatory respondent rates implicates the all-others rate.  The question

before the court is whether enforcement of a judgment sustaining Commerce's Remand

Results, which involves changes to the mandatory respondent rates but contains no

mention of the all-others rate, requires that Commerce also revise the all-others rate.

The court finds that Commerce has a practice of revising the all-others rate when

mandatory respondent rates change in the course of judicial review, even when the

plaintiff does not raise a challenge to the all-others rate in its complaint or during remand

proceedings.  Agency action becomes an established practice "when a uniform and

established procedure exists that would lead a party, in the absence of notification of

change, reasonably to expect adherence to" the agency's past action.  Mid Continent

Steel & Wire, Inc. v. United States, 41 CIT __, __, 203 F. Supp. 3d 1295, 1312 (2017)

(quoting Ranchers–Cattlemen Action Legal Found v. United States, 23 CIT 861, 884-85,

74 F. Supp. 2d 1353, 1374 (1999)).  The court has held that "two prior determinations are

not enough to constitute an agency practice that is binding on Commerce."  Shandong

Huarong Mach. Co. v. United States, 30 CIT 1269, 1293 n.23, 435 F. Supp. 2d 1261,

1282 n.23 (2006).  On the other hand, a methodology utilized by Commerce in five

consecutive stages of an antidumping proceeding constituted an agency practice.  See

Shikoku Chems. Corp. v. United States, 16 CIT 382, 388, 795 F. Supp. 417, 422 (1992).

Similarly, the court has found that a methodology used not exclusively but "repeatedly

and regularly" constituted a binding agency practice.  See Huvis Corp. v. United States,

31 CIT 1803, 1811, 525 F. Supp. 2d 1370, 1379 (2007) (holding that Commerce

established a practice of testing the arm's-length nature of a transfer price for purposes

of 19 U.S.C. § 1677e (2000) by repeatedly accepting cost of production data alone when

market price data was not available).

　　　As recently as May 11, 2018, Commerce acknowledged that its practice is to revise

the all-others rate when the mandatory respondent rates change in the course of judicial

review.  Final Results of Redetermination Pursuant to Court Remand in <u>Hyundai Steel</u>

<u>Co. v. United States</u> at 15, Court. No. 16-00161, May 11, 2018, ECF No. 80-1 ("<u>Hyundai</u>

<u>Remand Results</u>").   In its <u>Hyundai Remand Results</u>, after making changes to its

methodology which altered the mandatory respondent rates, Commerce explained its

practice with respect to the all-others rate:[4]

> Although no party has challenged the all others rate in this proceeding, it
> does not follow that Commerce has no authority to adjust this rate in this
> remand proceeding.   We regard adjusting the all others rate as a
> consequential (*i.e.,* collateral) change properly within the scope of the
> litigation.  If the Court affirms this remand redetermination and Commerce
> consequently issues an amended final determination effectuating this
> remand redetermination, it will be governed by section 735 of the Act, which
> provides for both the determination of weighted-average dumping margins
> for individually investigated respondents and an all others rate that, as a
> general rule, derives from the weighted-average dumping margins
> determined for the individually investigated respondents.   Therefore,

---

[4] U.S. Steel made the opposite argument before Commerce in <u>Hyundai Steel Co. v. United States</u>, 42 CIT __, Slip Op. 18-2 (Jan. 10, 2018) that it makes here, arguing that Commerce should not revise the all-others rate when mandatory respondent rates change pursuant to judicial review, where the all-others rate was not raised as a legal issue.  <u>See</u> Final Results of Redetermination Pursuant to Court Remand at 15, May 11, 2018, ECF No. 80-1 (addressing U.S. Steel's argument that Commerce should not recalculate the all-others rate on remand).  Although U.S. Steel has shifted its position on this matter across cases, this shift does not preclude the court from finding (in part) for U.S. Steel here.  The question before the court is whether Commerce acted in accordance with the law, which includes the requirement that Commerce adhere to its established practice, as well as the requirement that it not act in an arbitrary manner.  19 U.S.C. § 1516a(b)(1)(B)(i); <u>see also</u> Administrative Procedure Act, § 706, 5 U.S.C. § 706 (2012).

> because we intend to change the all others rate in any future amended final
> determination issued pursuant to this litigation, we are announcing this
> intent now.  Provided the statutory scheme in section 735 of the Act, we do
> not agree with the petitioner that adjusting the all others rate within this
> remand proceeding in accordance with the change made to [respondent's]
> calculated margin is outside the scope of the remand proceeding.[5]

Hyundai Remand Results at 15.  Commerce, therefore, affirmed that its practice is to

revise the all-others rate when the mandatory respondent rates change in the course of

judicial review, even when the all-others rate is not specifically raised in the plaintiff's

complaint or during remand proceedings.

Examination of Commerce's prior determinations also shows that its practice is to

revise the all-others rate in accordance with changes to the mandatory respondent rates,

even if not requested to do so in a complaint.  For example, in [OCTG] From Turkey,

Commerce revised the all-others rate after the mandatory respondents' rates changed

pursuant to remand.  See [OCTG] From Turkey (notice of court decision not in harmony

with the final determination of the countervailing duty investigation), 81 Fed. Reg. 12,691

(Dep't Commerce Mar. 10, 2016).  There, as here, the all-others rate was the average of

the two mandatory respondent rates.  Id. at 12,692.  The mandatory respondents' rates

were challenged in separate actions before this court, and this court remanded the cases

to Commerce.  See Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. and Borusan

Istikbal Ticaret v. United States, 39 CIT __, __, 61 F. Supp. 3d 1306 (2015); Maverick

---

[5] To the extent that Commerce intends this explanation to mean that 19 U.S.C. § 1673d(c)(5)(A)'s obligations only come into play when Commerce announces that it intends to change the all-others rate in an amended final determination, this position is unavailing.  Such a position is circular, arbitrary, and it belies Commerce's established practice of revising the all-others rate whenever individually examined respondent rates change pursuant to judicial review.

<u>Tube Corporation v. United States</u>, 39 CIT __, Slip Op. 15-59 (June 15, 2015).  The cases were consolidated, and on remand, Commerce modified the rates for both mandatory respondents, with one rate decreasing to a level considered de minimis.  <u>See</u> Final Results of Remand Redetermination, (Aug. 31, 2015), <u>available at</u> https://enforcement.trade.gov/remands/15-59.pdf (last visited Oct. 12, 2018).  Commerce did not announce a revised all-others rate during remand proceedings, and the court sustained Commerce's remand redetermination without mentioning the all-others rate in its opinion.  <u>See</u> <u>Maverick Tube Corporation v. United States</u>, 40 CIT __, Slip Op. 16-16 (Feb. 22, 2016).  In its Timken Notice, Commerce revised the all-others rate to match the rate of the sole remaining non de minimis rate—that of respondent Borusan.  <u>[OCTG]</u> <u>From Turkey</u>, 81 Fed. Reg. at 12,692.  Commerce explained that:

> Section 705(c)(5)(i) of the Act stipulates that the 'all others' rate should exclude zero and de minimis rates calculated for the companies individually investigated.  Therefore, for purposes of this amended Final Determination, [Commerce] will instruct [Customs and Border Protection] that the 'all-others' cash deposit rate is to be amended to Borusan's revised calculated subsidy rate . . .

<u>Id</u>.[6]  Commerce adjusted the all-others rate, despite the fact that none of the parties challenged the all-others rate specifically in their complaints, and Commerce did not discuss the rate in its final remand redetermination.

Commerce revised the all-others rate under similar circumstances in other proceedings as well.  <u>See</u> Final Results of Redetermination Pursuant to Court Remand in <u>Ozdemir Boru San. Ve Tic. Ltd. Sti. v. United States</u> at 6–7, Consol. Court. No. 16-

---

[6] Section 705(c)(5)(i) of the Act, as amended, 19 U.S.C. § 1671d(c)(5)(A)(i), provides the general rule for calculating the all-others rate in countervailing duty investigations.  The statute provides the same formula as 19 U.S.C. § 1673d(c)(5)(A).

00206, Dec. 12, 2017, ECF No. 59 (revising the all-others rate where the mandatory respondent rates changed, and where the all-others rate was not raised in the complaint); Final Results of Redetermination Pursuant to Court Remand in Rebar Trade Action Coalition v. United States at 45, Consol. Court. No. 14-00268, Jan. 13, 2017, ECF No. 109-1 (revising the all-others rate to match the adjusted rate of the only mandatory respondent with a non de minimis weighted average dumping margin, where the all-others rate was not raised in the complaint); Stainless Steel Sheet and Strip in Coils From Germany, 67 Fed. Reg. 15,178 (Dep't Commerce Mar. 29, 2002) (amended final determination of antidumping duty investigation) (revising the all-others rate pursuant to the court sustaining Commerce's remand redetermination during which a mandatory respondent's rate changed, where the plaintiff did not raise the all-others rate in the complaint); Certain Cold-Rolled Carbon Steel Flat Products From the Netherlands, 61 Fed. Reg. 47,871 (Dep't Commerce Sept. 11, 1996) (amended final determination pursuant to CIT decision) (revising the all-others rate pursuant to the court sustaining Commerce's remand redetermination which resulted in a change to the mandatory respondent's rate, where plaintiff did not raise the all-others rate in its complaint).  Each of these proceedings together make up a practice such that a party could "reasonably . . . expect adherence to" the agency's past action.  Ranchers–Cattlemen Action Legal Found v. United States, 23 CIT 861, 884–85, 74 F. Supp. 2d 1353, 1374 (1999).

Defendant argues that Commerce does not have an established practice of revising the all-others rate after the court upholds Commerce's remand redeterminations, and attempts to distinguish [OCTG] From Turkey, 81 Fed. Reg. 12,691, by pointing out

that it involved a plaintiff that was not selected as a mandatory respondent, i.e., a plaintiff subject to the all-others rate.[7]  See Def.'s Br. at 14–17.  Defendant maintains that the involvement of a plaintiff subject to the all-others rate served to implicitly raise—since the all-others plaintiff did not expressly raise the issue in its complaint—the issue of the all-others rate's accuracy.  Def.'s Br. at 15.  The court is not persuaded.  Even if the involvement of an all-others plaintiff serves to implicitly raise the issue of the all-others rate's accuracy, Commerce has not, in practice, utilized the presence of an all-others plaintiff as the dispositive factor.  The facts of [OCTG] From Turkey may be distinct, but Commerce regularly revises the all-others rate upon a change to the mandatory respondent rates in the course of judicial review, regardless of whether the case involves an all-others plaintiff.  See, e.g., Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes From the Republic of Turkey, 83 Fed. Reg. at 11,174; Stainless Steel Sheet and Strip in Coils From Germany, 67 Fed. Reg. at 15,178; Certain Cold-Rolled Carbon Steel Flat Products From the Netherlands, 61 Fed. Reg. at 47,871.  The manner in which Commerce revised the all-others rate in each of these proceedings belies the notion that [OCTG] From Turkey turned solely on the fact that an all-others plaintiff participated in the litigation.

---

[7] Defendant also argues that if Commerce has a practice of recalculating the all-others rate, its practice is to publish the revised rate in an amended final determination accompanying a Timken Notice, and because Commerce did not do that here, it would contravene its practice to publish another amended order with a revised all-others rate.  Def.'s Resp. Opp. Pl.'s Mot. Enforce J. at 17–18, July 27, 2018, ECF No. 158.  This argument, at its core, amounts to claiming that Commerce's practice is to revise the all-others rate, when it tells the parties that it will do so.  Such an approach would be standardless and therefore arbitrary.  The practice dictates the Timken Notice; the Timken notice does not dictate the practice.  Commerce must maintain a consistent practice, explain why it reasonably chose to deviate here, or announce a change in practice.

Defendant points out that in Commerce's ADD investigation into OCTG from Turkey, <u>Certain [OCTG] From the Republic of Turkey</u>, 81 Fed. Reg. 36,876 (Dep't Commerce June 8, 2016) (notice of court decision not in harmony with the final determination of the less than fair value investigation and notice of amended final determination of sales at less than fair value), Commerce did not revise the all-others rate following a remand in which Commerce modified the mandatory respondent rates.  Def.'s Br. at 16.  Defendant argues that this outcome demonstrates that Commerce does not have an established practice, and that U.S. Steel could not have relied on Commerce adhering to its practice, since U.S. Steel participated in litigation related to the above determination.  Def.'s Br. at 16 (<u>citing</u> <u>Maverick Tube Corp. v. Toscelik Profil ve Sac Endustrisi A.S.</u>, 861 F.3d 1269, 1269 (Fed. Cir. 2017), to show U.S. Steel's participation). One example of an alternative result is not sufficient to show a lack of practice, when a host of determinations show Commerce reaching a different result.  <u>See, e.g.</u>, <u>Huvis Corp. v. United States</u>, 31 CIT at 1811, 525 F. Supp. 2d at 1379 (for an example of a case where Commerce established a practice by "repeatedly and regularly" utilizing a methodology, though not exclusively).  Moreover, the lack of a motion to enforce judgment in <u>Maverick Tube Corp.</u> does not preclude a finding that Commerce has a practice and departed from it here.

Although Plaintiff argues successfully that Commerce has a practice of revising the all-others rate, Plaintiff's other arguments fail.  Plaintiff argues that Commerce's determination of the all-others rate contravenes the long-standing principle that Commerce may not rely on dumping margins that have previously been invalidated by

the courts.  See Pl.'s Br. at 6 (citing Sigma Corp. v. United States, 117 F.3d 1401, 1410

(Fed. Cir. 1997); D & L Supply Co. v. United States, 113 F.3d 1220, 1221 (Fed. Cir. 1997);

Ferro Union, Inc. v. United States, 23 CIT 178, 204, 44 F. Supp. 2d 1310, 1335 (1999)).

The cases cited by Plaintiff do not control here.[8]

The issue in D & L Supply was whether Commerce could continue relying on, as

best information available ("BIA"), an antidumping duty rate from a prior review that was

found to be invalid by this court.  D & L Supply, 113 F.3d at 1222–24.  The court held that

by refusing to adjust the rate, Commerce did not follow its statutory directive to rely on

the BIA to calculate an accurate dumping margin.  Id. at 1223.  The court's holding in D

& L Supply, therefore, applies to situations in which Commerce relies on a rate from a

separate review that has been declared invalid.  See id. at 1224 ("when the dumping

margin on which the BIA rate is based is invalidated before the BIA rate has become final,

it is irrational to ignore the invalidity of the underlying rate . . . .").   Here, by contrast,

Commerce based the all-others rate on the estimated dumping margins assigned to the

two mandatory respondents in this review.  The mandatory respondent rates had not been

declared invalid, as they were determined pursuant to this review.  The question here is

---

[8] In Ferro Union, the court was asked to decide whether Commerce's selection of a dumping margin from a prior administrative review of the same order met Commerce's statutory obligation pursuant to 19 U.S.C. § 1677e(c) (1994) to corroborate secondary information.  See Ferro Union, 23 CIT at 202–05, 44 F. Supp. 2d at 1332–35.  The issue was whether the selected margin was relevant and reliable, notwithstanding that it "was calculated eight years prior to the relevant [period of review], and [] was calculated for another producer of the subject merchandise."  Id., 23 CIT at 204, 44 F. Supp. 2d at 1335.  The court subsequently remanded the issue because Commerce did not explain the probative value of the rate, nor its connection to the relevant period of review and producer.  Id., 23 CIT at 205, 44 F. Supp. 2d at 1335.  Ferro Union did not, therefore, present a case of Commerce relying on an invalidated rate, and is thus factually distinct from this case.

not whether Commerce relied on valid rates to calculate the all-others rate, but whether

Commerce must recalculate an all-others rate once a mandatory respondent's rate

changes as a result of judicial review.  Therefore, Plaintiff's argument that Commerce

contravened the principles established in D & L Supply Co. fails.[9]

Plaintiff also argues that 19 U.S.C. § 1673d(c)(5)(A) requires Commerce to

recalculate the all-others rate when the mandatory respondent rates change.  See Pl.'s

Br. at 5–6.  Defendant counters that U.S. Steel waived its claim by not raising the issue

of the all-others rate in its complaint in U.S. Steel I or in the remand proceedings.  Def.'s

Br. at 8.  Failure to raise and adequately develop a legal claim results in waiver.  See

United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); Home Products Int'l, Inc. v.

United States, 38 CIT __, __, 810 F. Supp. 2d 1373,1378 (2012); MTZ Polyfilms, Ltd. v.

United States, 33 CIT __, __, 638 F. Supp. 2d 1325, 1350 (2009); Fujian Lianfu Forestry

Co., Ltd. v. United States, 33 CIT __, __, 638 F. Supp. 2d 1325, 1350 (2009).  U.S. Steel,

in its complaint and ensuing brief pursuant to U.S. Steel I, raised several issues, each of

which pertained to Commerce's methodology in its final determination and the propriety

of respondents' dumping margins.  See Mot. Pl. [U.S. Steel] J. Agency R. at 15–74, Mar.

23, 2015, ECF No. 31; Compl. ¶¶ 17–27, Nov. 10, 2014, ECF No. 9.  Missing from U.S.

---

[9] Plaintiff cites Sigma Corp. v. United States for the same proposition, i.e., that Commerce cannot use a dumping margin that has been invalidated by the courts to calculate the all-others rate.  See Pl.'s Resp. at 6 (citing Sigma Corp. v. United States, 117 F.3d 1401, 1410 (Fed. Cir. 1997)).  Plaintiff's reliance on Sigma is equally unpersuasive.  Sigma addressed two distinct issues: whether the plaintiffs preserved the issue of Commerce's use of a respondent's rate from a previous review as BIA, and whether Commerce correctly calculated that rate.  See Sigma, 117 F.3d at 1411.  With respect to the latter issue, the Sigma Court held that its holding in D & L Supply Co. controlled, since the same rate in the same ADD order was at issue.  See Sigma, 117 F.3d at 1411–12 ("[w]ith respect to the merits, our decision in D & L Supply controls.").  The preservation issue is discussed in detail below.

Steel's argument, however, is any explanation of how these issues should affect Commerce's calculation of the all-others rate.  U.S. Steel might have argued, as it did on this motion, that the plain language of 19 U.S.C. § 1673d(c)(5)(A) requires Commerce to recalculate the all-others rate when the mandatory respondent rates change.  U.S. Steel made no such argument, however, in its complaint pursuant to U.S. Steel I or during the remand proceedings before Commerce.  Defendant is therefore correct that U.S. Steel waived its claim that Commerce is required by statute to recalculate the all-others rate.[10]

   Nonetheless, the issue before the court is what the judgment in U.S. Steel II required.  The judgment required that Commerce act in accordance with law to effectuate the judgment.  See 19 U.S.C. § 1516a(b)(1).  In order to act in accordance with law, Commerce must follow its established practice or explain why it is reasonable for it to deviate from its practice.  Where Commerce deviates from its practice, it has two options.  First, Commerce may explain why it is reasonable under the circumstances to deviate from that practice.  Second, Commerce may announce a change to its practice, unless the party in the instant case can be shown to have detrimentally relied on such practice.  See e.g., Shikoku Chemicals Corp. v. United States, 16 CIT 382, 386, 795 F. Supp. 417, 420 (1992) (holding that the plaintiff's reliance interest was sufficient to preclude

---

[10] To the extent that Plaintiff relies on Sigma to overcome the waiver obstacle, such reliance is unavailing.  Although the plaintiffs in Sigma did not object to Commerce's use of the prior rate, the court found that the plaintiffs' complaint encompassed a challenge to the rate for other exporters.  See Sigma, 117 F.3d at 1411.  The complaint filed in Sigma referred to both the all-others rate and the margins applicable to the subject merchandise produced by the mandatory respondent and all other producers.  See Sigma, 117 F.3d at 1411.  Consequently, Sigma held that the complaint demonstrated to the court's satisfaction that the importers' claim was preserved for review by both this Court and the United States Court of Appeals for the Federal Circuit.  By contrast, the complaint filed here makes no similar reference.

Commerce from changing its methodology during the fifth and sixth reviews of the relevant ADD order); Brother Industries, Ltd. v. United States, 15 CIT 332, 338, 771 F. Supp. 374, 382 (1991) (noting that the purpose of prospective application of agency methodology is to avoid assigning a quality to conduct or acts already performed) (quoting Union Pacific R.R. Co. v. Laramie Stock Yards Co., 231 U.S. 190, 199 (1913)).  Because it is Commerce's practice to recalculate the all-others rate, it is of no moment that U.S. Steel failed to seek such relief in its complaint.  Commerce must act in accordance with law to effectuate the judgment.

Defendant also argues that Commerce properly effectuated the court's decisions in U.S. Steel I and U.S. Steel II, see Def.'s Br. at 6, and that U.S. Steel's argument regarding the all-others rate asks the court to entertain "an entirely new legal argument challenging Commerce's final determination."  Id. at 7.  This argument sidesteps the question before the court, i.e., whether Commerce effectuated the court's judgment in U.S. Steel II.  The court's judgment required that Commerce adjust the rates in accordance with law, or explain why it was deviating from its practice.  Where Commerce has an established practice, such practice is part of the law Commerce must follow, unless it explains why it is reasonable to deviate from its practice or it changes its practice.  See Fed. Comm. Commission v. Fox Television Stations, Inc., 556 U.S. 502, 515 (2009) (explaining that an agency must acknowledge when it changes its position and show good reasons for adopting the new position); Huvis Corp. v. United States, 570 F.3d 1347, 1354 (Fed. Cir. 2009).  Commerce provided no such explanation, and therefore Commerce failed to "properly effectuate" the court's judgment.

Finally, Defendant argues that U.S. Steel failed to exhaust its administrative remedies by not raising the issue of the all-others rate before Commerce during the remand proceeding, and therefore the court should not consider the issue.  Def.'s Br. at 12.  This argument misses the mark.  The court shall require exhaustion of administrative remedies where appropriate.  28 U.S.C. § 2637(d).  Exhaustion typically requires that the party submit a case brief to the agency that presents all arguments that continue to be relevant to Commerce's final determination or results.  See 19 C.F.R. § 351.309(c)(2) (2016).  The exhaustion doctrine may not preclude judicial review, however, where a party raises an issue before the court that Commerce did not address until its final decision, as the party must have a full and fair opportunity to raise the issue before the agency.  See Qingdao Taifa Group Co., Ltd. v. United States, 33 CIT 1090, 1093, 637 F. Supp. 2d 1231, 1236–37 (2009) (holding that a respondent did not have a fair opportunity to challenge two issues where Commerce's preliminary results were favorable to respondent and Commerce did not address the issue until after the deadline for case briefs passed for the first issue, and where Commerce did not address the second issue until the final results).

Here, Commerce issued its Remand Results on August 31, 2016.  See Remand Results.  Commerce did not list an all-others rate in its Remand Results.  See id. Commerce first acknowledged that it would not adjust the all-others rate in accordance with the revised mandatory respondent rates in its Amended ADD Order, issued on June 20, 2017.  See Amended ADD Order, 82 Fed. Reg. 28,045 (listing the all-others rate as 5.79%, the rate based on the dumping margins calculated for GVN and Jindal SAW

pursuant to the Final Results).  Thus, Commerce did not address the all-others rate until after the remand proceedings, and given Commerce's practice of revising the all-others rate, U.S. Steel had no reason to challenge the all-others rate during the remand proceedings.   At issue is not a prescribed administrative remedy, but rather the requirement that Commerce effectuate the court's judgment in accordance with law, which includes Commerce's practice, and U.S. Steel was not required to petition Commerce to follow the law.  U.S. Steel could not have been expected to speculate that Commerce might not follow its practice when issuing its Timken notice.  U.S. Steel did not, therefore, fail to exhaust its administrative remedies with respect to the all-others rate.

## CONCLUSION

For the reasons discussed above, U.S. Steel demonstrates that Defendant has not complied with the court's judgment.  Therefore, in accordance with the foregoing, it is

**ORDERED** that Plaintiff's motion to enforce the judgment is granted in part; and it is further

**ORDERED** that Commerce shall issue a revised Timken Notice consistent with this opinion.

 /s/ Claire R. Kelly
Claire R. Kelly, Judge

Dated: October 17, 2018
        New York, New York